UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GENE RAY FULCHER,

               Petitioner,

                                         Case No. 2:05-cv-083

v.

                                         HON. GORDON J. QUIST

JERI-ANN SHERRY,

               Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, an inmate currently confined at the Straights Correctional Facility, filed this petition for writ of habeas corpus challenging the validity of his conviction. Petitioner was convicted of third degree fleeing and eluding, operating under the influence of intoxicating liquor – third offense, and possession of marijuana. Petitioner was sentenced on November 4, 2002, to concurrent terms of 46 months to 15 years on Counts 1 and 2 and a concurrent term of one to two years on Count 3. Petitioner maintains that his conviction was obtained in violation of his federal rights. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

On November 6, 2001, Battle Creek Police Officer Todd Elliot observed a truck traveling at 50 mph in a 35 mph area. The driver of the truck refused to stop after Officer Elliot

activated his warning lights and siren. After a chase of fifteen to twenty minutes, the truck was brought to a halt through the use of stop sticks. Upon observing that Petitioner (who was operating the truck) appeared intoxicated, Officer Elliot had him taken to the Calhoun County Jail. A search of his person revealed marijuana and tests showed his body alcohol level at 0.16. Charges were authorized against Petitioner on March 20, 2002. Trial was held on October 10, 2002.

Before and during trial Petitioner was represented by attorney Mark Webb. The Prosecutor made a plea offer to Petitioner in open court. In return for a guilty plea to operating OUIL – third offense with a habitual offender – third offense enhancement, the other charges would be dismissed. The estimated sentencing guideline under this plea offer was 12 to 36 months. The plea offer was to be held open until the first status conference. Webb did not recall Petitioner's reaction to this offer. The first status conference was held on July 29, 2002. However, Petitioner did not appear as Webb failed to have him writted from the Michigan Department of Corrections. During the status conference, the Prosecutor made a second plea offer. In return for a guilty plea to OUIL – third, the Prosecutor would dismiss the habitual offender enhancement and the other charges. Webb testified that although he had no specific recollection of conveying this offer to Petitioner, it is his normal practice to convey plea offers to his clients, and that he believed he would have done so at their next meeting. Webb's next recorded contact with Petitioner was on August 14, 2002, the day originally set for trial. Webb's notes indicate that Petitioner spent the entire meeting trying to convince Webb that the case had been or should have been dismissed as part of a plea agreement in an unrelated case for which Petitioner was then incarcerated. Webb's testimony indicates that this was a recurrent theme throughout his relationship with Petitioner. Even up to the day of sentencing following his conviction, Petitioner continued to assert that the case had been

dismissed.   Webb testified that it was difficult to communicate with Petitioner because of Petitioner's obsessive belief that his case had been previously dismissed.

The August 14, 2002, trial was postponed because of the caseload of the trial court, and a status conference was set for September 30. Given the problems that had arisen regarding getting Petitioner from prison to court, the Prosecutor left the offer open until September 30. Petitioner was not brought to court on that day, and the reason for this absence is not known.  Webb did not recall wether the plea offer was left open until the date of trial or not.  On the day of trial, October 10, 2002, Attorney Webb told the Judge that he had not had an opportunity to convey the plea offer to Petitioner.  Webb was not permitted to take any offers to Petitioner on the day of trial.

Petitioner testified that after hearing the first plea offer, he told Attorney Webb to investigate whether the case had been dismissed, and that if it had not been dismissed he would accept the offer.  Petitioner testified that Webb told him that he would set up a date for Petitioner to come to court and accept the plea offer, although he could not be sure of the exact time frame of this conversation.  Petitioner testified that after this conversation he was not brought back to court until his trial was held.  Petitioner testified that he was not told about the second plea offer.

The trial court denied a motion for specific performance of the plea offer.  The court found that Webb did convey the second plea offer to Petitioner and that Petitioner had refused it because of his mistaken belief that the case had been dismissed.  The court held that even if Webb had failed to convey the second plea offer to Petitioner, no prejudice had resulted because Petitioner would not have accepted the plea given his obsessive belief that the case had been dismissed.

On appeal, Petitioner argued that his right to a speedy trial had been violated and that he had been deprived of the effective assistance of counsel in violation of the Sixth Amendment.

The Michigan Court of Appeals found that the trial court had correctly attributed a substantial delay to the fault of defense counsel, and that there was no evidence of prejudice from the "minor delays technically attributable to the Prosecutor." The court found that there was "no lapse of any six-month period in which nothing occurred to bring this case to trial." *People v. Fulcher*, Michigan Court of Appeals No 245466 (2005). The Court of Appeals also held that any failure by defense counsel to communicate plea offers to Petitioner did not result in prejudice. *Id*.

Petitioner now claims that the 338-day period between his arrest and trial was a violation of his constitutional right to a speedy trial. Petitioner contends that the delay was a violation of Michigan's 180-day rule, which requires trial within 180 days of incarceration. Petitioner argues that the deficient performance of his counsel in causing the delay of his trial must be held against the state, and that the state is also responsible for other delays such as waiting for the results of laboratory tests. Petitioner next claims that the trial court's holding that Attorney Webb conveyed the second offer was unreasonable, because Petitioner had told Webb that if the case was not dismissed then he would accept the first plea offer and would certainly have accepted the second plea offer. Petitioner claims that the finding of the Court of Appeals, that Petitioner was not prejudiced by any failure to convey a plea offer, and thus cannot state a claim under the Sixth Amendment, was also unreasonable.

Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is

whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner's claim that the delay in bringing him to trial violated Michigan's 180-day rule is not cognizable in a habeas corpus action. Petitioner also argues that the delay was unconstitutional. The Sixth Amendment mandates that a criminal prosecution be brought without undue delay against a person accused of a crime. Four factors must be balanced to determine whether a delay is unconstitutional: length of delay, reason for the delay, criminal defendant's assertion of the right to a speedy trial, and prejudice resulting from the delay. *United States v. Brown*, 169 F.3d 344, 348 (6th Cir. 1999); *Smith*, 94 F.3d at 207 (*citing Barker v. Wingo*, 407 U.S. 514, 530 (1972)). In order to trigger a speedy trial analysis, petitioner must allege that the delay complained of has crossed the threshold dividing ordinary from "presumptively prejudicial." *Doggett v. United States*, 505 U.S. 647, 651-2 (1992) (*citing Barker*, 407 U.S. at 530-1). Courts have generally found delays of more than one year to be "presumptively prejudicial." *Doggett*, 505

U.S. 652, n. 1.  In this case, trial was held approximately seven months after charges were authorized

against Petitioner.  While Petitioner was incarcerated during this period, this incarceration was also

due to unrelated charges against him.  Petitioner's trial was originally scheduled for August 14, 2002,

but was rescheduled tor October 10, 2002.  The delay stemmed from docket issues in the trial court,

not from mismanagement of the case by the government.  Further delay was caused by the problems

encountered in having Petitioner writted out to the courthouse on two occasions.  The government

was not responsible for either of these problems.  Furthermore, there is no evidence that Petitioner

was actually prejudiced by the delays attributable to the Prosecutor.  For these reasons, the Michigan

Court of Appeals did not make a decision which was contrary to clearly established federal law when

it ruled that Petitioner had not been denied his right to a speedy trial.

Petitioner next claims that he was deprived of his right to the effective assistance of

counsel by his trial counsel's failure to communicate the second plea offer. To prevail on an

ineffective assistance of counsel claim, a convicted defendant must demonstrate (1) that counsel's

errors were so serious that counsel was not functioning as counsel guaranteed by the Sixth

Amendment, and (2) that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S.

668, 688-96 (1984).  Stated another way, this court is to decide whether petitioner's trial counsel's

alleged failures were such egregious errors as to constitute ineffectiveness and whether the alleged

failures were materially prejudicial.  The Sixth Circuit has explained:

> The question for reviewing courts is whether counsel's errors have
> likely undermined the reliability of, and confidence in, the result.
> *Lockhart v. Fretwell*, 113 S.Ct. 838, 842-43 (1993).  "An error by
> counsel, even if professionally unreasonable, does not warrant setting
> aside the judgment of a criminal proceeding if the error had no effect

on the [ultimate] judgment." *Strickland*, 466 U.S. at 691, *quoted in Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990).  In evaluating petitioner's claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*), *cert. denied*, 113 S. Ct. 2969 (1993). Thus, the determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was "snatched from the jaws of victory." *See Id.*

*West v. Seabold*, 73 F.3d 81,84 (6th Cir. 1996).

The Michigan Court of Appeals did not reach Petitioner's challenge to the trial court's finding that Attorney Webb had conveyed the second plea offer and Petitioner had rejected it. The Court of Appeals noted that "[e]ven if trial counsel fails to communicate properly a plea offer to a defendant, the trial court need not sentence defendant according to the offer unless there was a 'reasonable probability' that the defendant would have accepted it." *Fulcher*, Michigan Court of Appeals No. 245466 (2005), citing *Magana v. Hofbauer*, 263 F.3d. 542, 550 (6th Cir. 2001). This is essentially a restatement of the second prong of the *Strickland* test, and is not contrary to clearly established federal law as set out by the Supreme Court. The Court of Appeals also upheld the trial court's factual finding that because of Petitioner's obsessive belief that his case had been dismissed pursuant to a previous plea agreement, and because Petitioner's motion to dismiss on such grounds was still pending when the plea offer lapsed on September 30, 2002, there was not a reasonable probability that Petitioner would have accepted the offer. Petitioner has not presented any additional evidence to overcome the presumption of correctness that attaches to state factual findings.

Therefore, Petitioner has not established that counsel's errors were materially prejudicial. Accordingly, the petition should be denied under the second prong of the *Strickland* test.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice. In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Petitioner's claim of unconstitutional delay in bringing him to trial is clearly without merit. A seven-month delay is not long enough to establish a presumption of prejudice. Furthermore, Petitioner and his counsel contributed to the length of the delay. There is no evidence of actual prejudice from the delay, and there are no unusual circumstances that would warrant special consideration of this case.

With regard to Petitioner's claim that he was deprived of the effective assistance of counsel, Petitioner has failed to raise any new arguments or present any new evidence that would justify a departure from the conclusions reached by the Michigan Court of Appeals. It is not debatable that Petitioner is unable, under *Strickland*, to demonstrate a constitutional violation if the alleged misconduct of his attorney could not have resulted in material prejudice. It is also clear that Petitioner has not met the high standard of establishing that the state courts' findings- that Petitioner would have refused the second plea offer even if it were conveyed to him- was an unreasonable determination of the facts. Taking into account the deference with which this court must examine the decisions of the state courts, the undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE


Dated:   August 9, 2007